## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WARREN GORDON**                                      **CIVIL ACTION**

**VERSUS**                                                        **NO. 15-2303**

**SANDY McCAIN, WARDEN**                       **SECTION: "I"(1)**


### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Warren Gordon, is a state prisoner incarcerated at the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.  On December 7, 2010, he was convicted of possession with intent to distribute methamphetamine.[1]  On March 2, 2011, he was found to be a third offender and was sentenced as such to a term of forty years imprisonment.[2]  On December 21, 2011, the Louisiana First Circuit Court of Appeal affirmed his conviction, habitual offender adjudication,

---

[1] State Rec., Vol. 3 of 5, trial transcript, p. 463; State Rec., Vol. 1 of 5, minute entry dated December 7, 2010; State Rec., Vol. 1 of 5, jury verdict form.
[2] State Rec., Vol. 3 of 5, transcript of March 2, 2011; State Rec., Vol. 1 of 5, minute entry dated March 2, 2011.

and sentence.[3]  The Louisiana Supreme Court then denied his related writ application on May 18, 2012.[4]

On March 8, 2013, petitioner filed an application for post-conviction relief with the state district court.[5]  That application was denied on May 22, 2013.[6]  His related writ applications were likewise denied by the Louisiana First Circuit Court of Appeal on November 4, 2013,[7] and March 21, 2014,[8] and by the Louisiana Supreme Court on January 16, 2015.[9]

On June 16, 2015, petitioner filed the instant federal application seeking *habeas corpus* relief.[10]  The state concedes that petitioner has exhausted his remedies in the state courts but argues that his application should be dismissed as untimely or, alternatively, on the merits.[11]

### STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final."  28 U.S.C. § 2244(d)(1)(A).[12]  On that point, the United States Fifth Circuit Court of Appeals has explained:

---

[3] State v. Gordon, No. 2011 KA 0810 (La. App. 1st Cir. Dec. 21, 2011) (unpublished); State Rec., Vol. 4 of 5.

[4] State v. Gordon, 89 So.3d 1190 (La. 2012); State Rec., Vol. 4 of 5.

[5] State Rec., Vol. 4 of 5.  Federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system."  Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006).  Because that date cannot be gleaned from the state court record with respect to this application, this Court will simply use the signature date as the filing date, in that the application was obviously placed in the mail no earlier than the date it was signed.  The Court notes that the state also argues that the filing date was March 8, 2013.  Rec. Doc. 13, p. 2; Rec. Doc. 14, p. 3.

[6] State Rec., Vol. 4 of 5, Order dated May 22, 2013.

[7] State v. Gordon, No. 2013 KW 1320 (La. App. 1st Cir. Nov. 4, 2013); State Rec., Vol. 4 of 5.

[8] State v. Gordon, No. 2013 KW 2094 (La. App. 1st Cir. Mar. 21, 2014); State Rec., Vol. 4 of 5.

[9] State *ex rel.* Gordon v. State, 157 So.3d 1125 (La. 2015); State Rec., Vol. 4 of 5.

[10] Rec. Doc. 4.  "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  Petitioner states under penalty of perjury that he placed the application in the prison mailing system on June 16, 2015.  Rec. Doc. 4, p. 11.

[11] Rec. Docs. 13 and 14.

[12] Although 28 U.S.C. § 2244(d)(1) has alternative subsections providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are not applicable in the instant case.

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). *When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court.* Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008) (emphasis added).

In the instant case, the Louisiana Supreme Court denied petitioner's direct-review writ application on May 18, 2012.[13]  Accordingly, for the purposes of the AEDPA, his conviction became final, and his federal limitations period therefore commenced, on August 16, 2012.  The limitations period then expired one year later, unless that deadline was extended through tolling.

The Court first considers statutory tolling.  Regarding the statute of limitations, the AEDPA expressly provides:  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).

After two hundred three (203) days elapsed, petitioner tolled his federal limitations period by filing a post-conviction application with the state district court on March 8, 2013.  Tolling then continued uninterrupted for the duration of the post-conviction proceedings, so long as he sought supervisory review in a timely manner.  Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-71 (5th Cir. 2004).

In the instant case, the state argues that tolling was interrupted because (1) petitioner's first writ application filed with the Louisiana First Circuit Court of Appeal in Case No. 2013 KW 1320

---

[13] State v. Gordon, 89 So.3d 1190 (La. 2012); State Rec., Vol. 4 of 5.

was untimely and (2) that writ application was defective because he failed to attach the required supporting documentation. Although the state's argument is not patently frivolous, the undersigned finds it unconvincing under the particular facts of this case.

In denying relief in Case No. 2013 KW 1320, the Louisiana First Circuit Court of Appeal held:

> **WRIT DENIED ON THE SHOWING MADE.** Relator failed to include a copy of the court's ruling on his application for postconviction relief, all pertinent transcripts and minute entries, the state's answer, if any, and any other portions of the district court record that might support the claims raised in the application for postconviction relief. Supplementation of this writ application and/or application for rehearing will not be considered. See Uniform Rules of Louisiana Courts of Appeal, Rules 2-18.7 & 4.9. Any future filing on this issue should include the entire contents of this application, the missing items noted above, and a copy of this ruling. In the event relator elects to file a new application with this Court, the application must be filed on or before December 30, 2013. [14]

Based on the foregoing, the undersigned is reluctant to find that the application was untimely. The United States Fifth Circuit Court of Appeals has held that "when the denial of an application is based on untimeliness, Louisiana courts *routinely and unmistakably indicate so* in their opinions." Grillette, 372 F.3d at 775 (emphasis added). Here, the Court of Appeal made no mention of untimeliness as a basis for denying relief, and, moreover, invited petitioner to submit a new writ application, giving him an extended deadline for doing so.

The undersigned is likewise reluctant to find that tolling was interrupted by the technical defects in the writ application. Although the state correctly notes that a state application must be "properly filed" in order to toll the federal limitations period, the undersigned declines to rigidly apply that rule in this case in light of the fact that, as noted, the state court invited petitioner to

---

[14] State v. Gordon, No. 2013 KW 1320 (La. App. 1st Cir. Nov. 4, 2013); State Rec., Vol. 4 of 5.

correct the defects and gave him an extended period to do so.  Moreover, petitioner in fact availed himself of that opportunity by filing a corrected writ application in Case No. 2013 KW 2094, which the Court of Appeal then considered.

Mindful of these considerations and the admonition that the AEDPA's statute of limitations should not be applied "too harshly," see Windland v. Quarterman, 578 F.3d 314, 317 n. 5 (5th Cir. 2009), the undersigned finds that tolling was not interrupted by either the seeming untimeliness of the filing or the defects in the writ application.  See Holton v. Cain, Civ. Action No. 3:11-cv-00749, 2014 WL 3189737, at *5-6 (M.D. La. July 8, 2014); but see McClendon v. Cain, Civ. Action No. 12-0615, 2013 WL 6328273, at *5-7 (M.D. La. Dec. 4, 2013).[15]

In light of foregoing, and because the state does not argue that petitioner's writ application in Case No. 2013 KW 2094 or his subsequent related Louisiana Supreme Court writ application were untimely or otherwise defective, the Court, out of an abundance of caution, finds that the limitations period remained tolled until the Louisiana Supreme Court denied relief on collateral review on January 16, 2015.[16]

When tolling then ceased at that point, petitioner had one hundred sixty-two (162) days of the federal limitations period remaining.  Accordingly, his deadline for seeking federal relief was Monday, June 29, 2015.[17]  Because he filed his federal application on June 16, 2015, it was timely. Therefore, his claims will be considered on the merits.

---

[15] Although, perhaps, the Court is being overly generous by giving petitioner the benefit of the doubt on these points, the state is unharmed by this generosity in light of the fact that petitioner's claims ultimately fail on the merits in any event.

[16] State ex rel. Gordon v. State, 157 So.3d 1125 (La. 2015); State Rec., Vol. 4 of 5.

[17] Because the one-hundred-sixty-second day here fell on a Saturday, petitioner's deadline was extended through the following Monday, June 29, 2015.  See Flanagan v. Johnson, 154 F.3d 196, 202 (5th Cir. 1998) ("We hold that [Fed.R.Civ.P.] 6(a) applies to the computation of the one year limitation period in § 2244(d) of AEDPA."); Fed. R.

**STANDARDS OF REVIEW**

The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary

---

Civ. P. 6(a) (if the last day of an applicable period is a Saturday, a Sunday, a legal holiday, or a day when the clerk's office is inaccessible, the period runs until the end of the next day that is not one of those days).

to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held:  "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case."  White v. Woodall, 134 S. Ct. 1697, 1706 (2014).  However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision.   AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law."  Wright v. Van Patten,

552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has also

expressly cautioned that "an unreasonable application is different from an incorrect one."  Bell,

535 U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court

precedent simply does not warrant *habeas* relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir.

2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect

application of the law by a state court will nonetheless be affirmed if it is not simultaneously

unreasonable.").

     While the AEDPA standards of review are strict and narrow, they are purposely so.  As the

United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion
> was unreasonable.
>      If this standard is difficult to meet, that is because it was meant to be.  As
> amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal
> court relitigation of claims already rejected in state proceedings.  It preserves
> authority to issue the writ in cases where there is no possibility fairminded jurists
> could disagree that the state court's decision conflicts with this Court's precedents.
> It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard
> against *extreme malfunctions* in the state criminal justice systems, *not a substitute*
> *for ordinary error correction through appeal.  As a condition for obtaining habeas*
> *corpus from a federal court, a state prisoner must show that the state court's ruling*
> *on the claim being presented in federal court was so lacking in justification that*
> *there was an error well understood and comprehended in existing law beyond any*
> *possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of

state courts.").

     The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the

law and apply the strictly deferential standards of review mandated therein.  White v. Woodall,

134 S. Ct. 1697, 1701 (2014).

## FACTS

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this

case as follows:

> On July 18, 2010, Detective Ricky Steinert, with the St. Tammany Parish Sheriff's Office, spoke with a confidential informant with whom the detective had worked in the past.  The confidential informant had arranged to purchase methamphetamine from the defendant the following day at Friendly Fred's in Pearl River, Louisiana.  According to the confidential informant, the defendant would have about $400 worth of methamphetamine in his truck.  Detectives from the St. Tammany Parish Sheriff's Office planned to conduct a "rip," wherein the defendant would be stopped and arrested before the drug transaction took place.  On July 19, 2010, police surveillance began at the St. Tammany Parish Justice Center in Covington, where the defendant was observed getting into his Ford pickup truck with his brother.  Detectives followed the defendant as he drove from Covington to Friendly Fred's, where other detectives were waiting for his arrival.  When the defendant pulled into the parking lot, detectives conducted a felony stop of the defendant's truck prior to any drug transaction taking place.
>
> Sergeant Steven Gaudet, with the St. Tammany Parish Sheriff's Office asked the defendant if he had anything illegal inside his truck.  The defendant responded that he did not and told Sergeant Gaudet to "go ahead and search it."  Sergeant Gaudet looked inside the truck and found an amber-colored prescription bottle with a white cap on the front driver's side floorboard.  Inside the bottle were three small plastic bags each containing methamphetamine in the form of a white powder.  The net weight of the methamphetamine was 1.48 grams.[18]

## PETITIONER'S CLAIMS

Petitioner claims that he received ineffective assistance of counsel both at trial and on

appeal.  In the post-conviction proceedings, the state district court denied those claims, holding:

> Petitioner filed this application for post-conviction relief alleging that he received ineffective assistance of counsel at the trial and appellate levels.  Petitioner

---

[18] State v. Gordon, No. 2011 KA 0810, pp. 2-3 (La. App. 1st Cir. Dec. 21, 2011) (unpublished); State Rec., Vol. 4 of 5.

contends that trial counsel was ineffective for his failure to prepare for trial. According to petitioner, his defense to the charge of Possession with Intent to Distribute Methamphetamine should have included subpoenaing two witnesses who would testify that he was taking them to buy methamphetamine and brought his own methamphetamine to share with them on the ride to buy more. He also attempts to refute the sufficiency of the evidence as to the street value of the drugs among other things. Claim One is without merit. In Claim Two, petitioner asserts the ineffectiveness of appellate counsel for failing to appeal his multiple offender adjudication. Petitioner's claims with regard to the cleansing period are likewise without merit, therefore appellate counsel was not ineffective in failing to appeal the multiple offender adjudication. [19]

Without additional reasons assigned, his related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[20] and by the Louisiana Supreme Court. [21]

Because petitioner's ineffective assistance of counsel claims were rejected by the state court on the merits, and because such claims present mixed questions of law and fact, this Court must defer to the state court decision rejecting the claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court has explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact doubly deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state

---

[19] State Rec., Vol. 4 of 5, Order dated May 22, 2013.
[20] State v. Gordon, No. 2013 KW 2094 (La. App. 1st Cir. Mar. 21, 2014); State Rec., Vol. 4 of 5.
[21] State *ex rel.* Gordon v. State, 157 So.3d 1125 (La. 2015); State Rec., Vol. 4 of 5.

court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.

    A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." <u>Ibid</u>. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

    Surmounting <u>Strickland</u>'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

    Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

Id. at 105 (citations omitted; emphasis added).  For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claims.

The United States Supreme Court established a two-prong test for evaluating such claims. Specifically, a petitioner seeking relief must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 697 (1984).   The petitioner bears the burden of proof and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that the petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).   "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  The petitioner must overcome a strong presumption that the conduct

of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

The appropriate standard for determining prejudice varies slightly depending on whether a petitioner is challenging the actions of trial or appellate counsel.  To prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  On the other hand, to prove prejudice with respect to a claim that appellate counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation.  Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000).  Therefore, the petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error.  Briseno, 274 F.3d at 210.

Petitioner primarily argues that trial counsel was ineffective for failing to prepare for trial. Specifically, petitioner challenges the adequacy of counsel's investigation into the facts of the case.

Petitioner was represented at trial by Robert Stamps, a public defender.  It does appear from the record that there was little investigation into the case by Stamps.  Specifically, in connection with a request for a continuance,[22] the record reflects the following exchange:

---

[22] The Court notes that Louisiana law provides:  "A motion for a continuance shall be in writing and shall allege specifically the grounds upon which it is based and, when made by a defendant, must be verified by his affidavit or that of his counsel. It shall be filed at least seven days prior to the commencement of trial."  La. Code Crim. Proc. art. 707.  Petitioner argues that defense counsel was ineffective for failing to comply with the requirements of that article

MR. STAMPS:

Your Honor, on behalf of the defendant, I filed a motion to continue, and the motion to continue is predicated upon the fact that Ernie Bauer had been the attorney representing the particular defendant.  He withdrew and got out.  I came into the case, and when I came into the case, I started filing all the motions that I considered to be important.

But at this time, the defendant would request a continuance of the matter to allow him to hire private counsel, because he believes that his case should be handled by private counsel, and there are certain other things now he's telling me. There are witnesses he wants to have subpoenaed and everything else at this time.

BY THE COURT:

How long has this matter been on the docket?  When was he arraigned?

BY THE CLERK:

September 22nd.

BY MR. STAMPS:

I was not involved with him, and I only became involved with him in about the last week or so when Mr. Bauer withdrew out of the case, and then I came into the case, and I met with him in the jail, and I spoke with him, but I didn't have a chance to go over all the big particulars, but then I started filing the motions I considered to be appropriate for the proceedings, Your Honor.

But he desires to have his own counsel, and constitutionally I think he should be allowed to hire private counsel that could handle the matter.

BY THE COURT:

Well, he had private counsel.

BY MR. STAMPS:

Well, that counsel withdrew.

BY THE COURT:

Well, how many times do we have to go through this?

---

when requesting the continuance.  However, the Court can easily dispose of that related claim.  First, the transcript reflects that it was petitioner's desire to retain private counsel (not counsel's desire for a continuance based on a purported lack of necessary preparation) which prompted the last-minute request for a continuance.  There is no evidence in the record that counsel had been made aware of petitioner's desire in advance, and counsel cannot be faulted for failing to comply with article 707's provisions in such circumstances.  Moreover, in any event, the motion was **not** denied for technical noncompliance with article 707; rather, it was denied based on the trial judge's finding that Mr. Stamps had actually been involved in the case from the time of the arraignment, not simply as a last-minute substitution upon the withdrawal of petitioner's retained counsel.  See State Rec., Vol. 1 of 5, transcript of December 6, 2010, pp. 102-05.  Where, as here, noncompliance with article 707 was not the reason for the denial of a motion for a continuance, petitioner cannot show that he was prejudiced by counsel's failure to comply with that article.  See, e.g., Bolton v. Cain, Civ. Action No. 13-4572, 2014 WL 432943, at *20 (E.D. La. Feb. 4, 2014)

BY MR. STAMPS:

     All I know is the attorney who was representing him withdrew.

BY THE COURT:

     The motion is denied.

BY MR. STAMPS:

     Objection for the record, Your Honor.

BY THE COURT:

     Ready for the jury?

BY MR. GARDNER [the prosecutor]:

     Yes, Judge.

BY MR. GORDON:

     Your Honor, may I address the Court, sir?

BY THE COURT:

     Yes, sir.

BY MR. GORDON:

     I've had maybe 10 to 12 minutes maybe to speak to my attorney about this case. I would like some time to discuss it with him, sit down and go over it in private. This is my life on the line here, sir.

BY THE COURT:

     I understand. Mr. Stamps, you spent some time with him?

BY MR. STAMPS:

     What happened was when I understood that Mr. Bauer was out, I went to the jail and I met with him and I discussed everything preliminarily with him, and I started filing the motions. As Your Honor would know, I was involved in a CLE situation, and then I was in court a couple of days last week, and it's a matter of, you know, this is not the only case I work.

BY THE COURT:

     I understand.

BY MR. STAMPS:

     I filed all the appropriate motions that I thought were necessary.

15

BY THE COURT:

      How much time would you like with Mr. Stamps?

BY MR. GORDON:

      Between an hour and two hours tops.

BY THE COURT:

      No, we don't have that much time.  We've got a jury waiting upstairs.

BY MR. GORDON:

      I need some time to go over the case with him.  I mean, we haven't even discussed the case, sir.  We spent 10 to 12 minutes in the jail out there, and that's all we even talked about.

      Ernie Bauer didn't tell me why he withdraw.  He came to the jail and said, Todd, I withdrew, and 15 minutes later, he came to the jail.[23]

Although the trial judge denied the motion to continue, he granted a recess of approximately thirty minutes for private consultation between petitioner and Mr. Stamps. [24]

As an initial matter, the undersigned notes that the question of whether the trial court judge acted properly in denying the motion for a continuance is not before this Court, because petitioner has *not* asserted in this federal proceeding a claim that his rights were violated by that action. Rather, he has asserted only ineffective assistance of counsel claims.  Therefore, the propriety of the trial judge's actions need not, and will not, be addressed.[25]

Rather, the issue before this Court is instead whether petitioner's right to the effective assistance of counsel was violated by Mr. Stamps' failure to adequately investigate the case prior

---

[23] State Rec., Vol. 1 of 5, transcript of December 6, 2010, pp. 99-102.

[24] State Rec., Vol. 1 of 5, transcript of December 6, 2010, p. 105.  Out of an abundance of caution, the Court notes that "brevity of consultation time between a defendant and his counsel, alone, cannot support a claim of ineffective assistance of counsel."  Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984); accord United States v. Reed, 756 F.2d 654, 657 (8th Cir. 1985) (holding that it did not constitute ineffective assistance of counsel where attorney met with defendant only two hours the day before defendant's trial).

[25] The Court notes, however, that a claim challenging the trial judge's action was rejected on direct appeal. State v. Gordon, No. 2011 KA 0810, at pp. 7-9 (La. App. 1st Cir. Dec. 21, 2011) (unpublished), writ denied, 89 So.3d 1190 (La. 2012); State Rec., Vol. 4 of 5.

to the scheduled trial date.  Again, as noted, petitioner can prevail on this claim only by establishing **both** that Mr. Stamps' performance in this regard was deficient **and** that prejudice resulted. Strickland, 466 U.S. at 697. In this case, the Court elects to pretermit a finding on the "deficiency" prong of that analysis, in that petitioner has clearly failed to meet his burden of proof with respect to the "prejudice" prong.

To prove prejudice with respect to such a claim, a petitioner must point to evidence in the record demonstrating that further investigation would in fact have revealed additional information beneficial to the defense.  See Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).  Here, petitioner argues that counsel's inadequate preparation resulted in the unavailability of witnesses who could have testified that petitioner (1) was not selling drugs, (2) was instead only providing transportation to others seeking to buy drugs, and (3) intended simply to share his own drugs while in route. Petitioner also argues that the witnesses could have further established that the "street value" of the drugs in question was lower than the prosecution alleged, and such testimony would have furnished a basis for the jury a basis to conclude that the amount of drugs involved was more likely for personal use than distribution.

The problem, however, is that petitioner's assertions are unsupported by even a scintilla of evidence – he has provided no proof whatsoever that the proposed witnesses would in fact have supported petitioner's version of events if they had been interviewed or, for that matter, provided *any* information that would have been beneficial to the defense.  That defect is fatal, in that a

petitioner's bare speculation as to what additional investigation would have revealed is insufficient to prove the prejudice required to prevail on such a claim.  See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

That same defect also exists with respect to petitioner's related claim that counsel was ineffective for failing to call the purported witnesses to testify at trial.  As the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain.  For this reason, *we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense.* This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted; emphasis added); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

Here, petitioner presented no evidence, such as affidavits from the uncalled witnesses, demonstrating that they would have testified in a manner beneficial to the defense.  Therefore, again, he obviously failed met his burden of proof with respect to this claim.  See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from

the defendant"); <u>Buniff v. Cain</u>, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); <u>Anthony v. Cain</u>, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); <u>Combs v. United States</u>, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); <u>Harris v. Director, TDCJ-CID</u>, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").[26]

Lastly, petitioner claims that his appellate counsel was ineffective for failing to challenge the habitual offender adjudication on the ground that the state did not prove that the predicate convictions fell within the applicable "cleansing period." As Louisiana courts have explained:

> [T]he State bears the burden of proving that the predicate convictions fall within the "cleansing period" prescribed by La. R.S. 15:529.1(C), and thus, the Habitual Offender Law is inapplicable where more than ten years have elapsed between the date of the commission of the current offense and the expiration of the maximum sentence of the previous conviction. <u>State v. Boiteux</u>, 11-191 (La.App. 5 Cir. 12/13/11), 81 So.3d 123, 127; <u>State v. Hollins</u>, 99-278 (La.App. 5 Cir. 8/31/99), 742 So.2d 671, 685, <u>writ denied</u>, 99-2853 (La. 1/5/01), 778 So.2d 587.
>   La. R.S. 15:529.1(C) specifically provides:

---

[26] The Court also notes that the parties dispute the propriety of counsel's actions concerning one of the proposed witnesses, Joe Provost. Petitioner faults counsel for failing to secure Provost's presence at trial. The state counters that counsel in fact subpoenaed Provost but that he evaded service. Petitioner then opines that counsel was nevertheless ineffective because he inadvertently alerted Provost that a subpoena might be issued, which allowed Provost to evade service. Fortunately, the Court need not wade into this mire. *Even if* counsel performed deficiently in some respect in his dealings to secure Provost's presence, petitioner's claim still fails because he has not met his burden to prove that he was in fact prejudiced by Provost's absence.

> C. The current offense shall not be counted as, respectively, a second, third, fourth, or higher offense if more than ten years have elapsed between the date of the commission of the current offense or offenses and the expiration of the maximum sentence or sentences of the previous conviction or convictions, or between the expiration of the maximum sentence or sentences of each preceding conviction or convictions alleged in the multiple offender bill and the date of the commission of the following offense or offenses.  In computing the intervals of time as provided herein, any period of parole, probation, or incarceration by a person in a penal institution, within or without the state, shall not be included in the computation of any of said ten-year periods between the expiration of the maximum sentence or sentences and the next succeeding offense or offenses.

> La. R.S. 15:529.1(F) further provides that the State may present, as *prima facie* evidence of the defendant's imprisonment and discharge, a certificate of the chief officer of a prison or jail or of a clerk of court, containing the name of the person imprisoned, the photograph, and the fingerprints of the person as they appear in the records of his office, a statement of the court in which a conviction was had, the date and time of sentence, length of time imprisoned, and date of discharge from prison or penitentiary.
>
> The ten-year "cleansing period" begins to run from the date that a defendant is actually discharged from state custody and supervision.  State v. Anderson, 349 So.2d 311, 314 (La. 1977); State v. Thomas, 04-1341 (La.App. 5 Cir. 5/31/05), 904 So.2d 896, 906, writ denied, 05-2002 (La. 2/17/06), 924 So.2d 1013.  Therefore, the commencement of the "cleansing period" is from the "date of discharge from state supervision, because the discharge can take place earlier than the theoretical date on which the sentence would have terminated due to pardon, commutation or good time credit, or it could take place later because of parole revocation."  State v. Mosley, 08-1319 (La.App. 5 Cir. 5/26/09), 16 So.3d 398, 401; State v. Humphrey, 96-838 (La.App. 5 Cir. 4/29/97), 694 So.2d 1082, 1088, writ denied, 97-1461 (La. 11/7/97), 703 So.2d 35.  However, if less than the "cleansing period" has elapsed between a defendant's conviction on a predicate felony and his commission of a subsequent predicate felony, the State need not prove the date of discharge on the earlier sentence in the habitual offender proceedings.  Mosley, *supra* at 401; State v. Brooks, 01-864 (La.App. 5 Cir. 1/29/02), 807 So.2d 1090, 1101.

State v. Baskin, 169 So.3d 667, 669-70 (La. App. 5th Cir. 2015).

Here, petitioner argues that the state did not prove the actual "discharge dates" of his predicate convictions from 1993 and 2000.

The 1993 conviction obviously poses no problem.  Because less than ten years elapsed between that conviction and the 2000 conviction to which it is linked, no proof of the "discharge date" was required.

The 2000 conviction, however, is problematic.  Because more than ten years elapsed between petitioner's most recent predicate conviction on February 3, 2000, and July 19, 2010, the date of the instant offense, the state was required to prove the actual "discharge date" of that 2000 conviction.  Petitioner argues that the state presented no evidence on that issue and, therefore, appellate counsel was ineffective for failing to challenge the habitual offender adjudication on that basis.

As an initial matter, it is unclear what evidence the state submitted concerning the "discharge date" in question.  The record suggests that the state submitted documentation reflecting that the "discharge date" was November 1, 2002, less than ten years prior to the instant offense.[27]  However, that supporting documentation has not been provided for this Court's review.[28]

Nevertheless, *even if* the Court assumes for the purposes of this decision that the habitual offender proceeding was defective in this respect and that the claim would have had merit if it had been asserted on appeal, it does not necessarily follow that counsel was ineffective for failing to assert the claim.  On the contrary, it is clear appellate counsel "is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)."  West v. Johnson, 92 F.3d 1385, 1396 (5th Cir. 1996).  Instead, counsel is allowed to make strategic choices.

---

[27] State Rec., Vol. 3 of 5, transcript of February 28, 2011, p. 515-16.
[28] See Rec. Doc. 14, p. 11 n.2.

See, e.g., Burger v. Kemp, 483 U.S. 776, 784 (784 (1987); Jones v. Barnes, 463 U.S. 745, 751-54 (1983).  Here, appellate counsel had a valid strategic reason for avoiding the claim petitioner now suggests.

In this case, the state filed a Multiple Offender Bill of Information alleging that petitioner had **nine** prior convictions.[29]   Defense counsel filed two motions to quash.[30]   At the habitual offender hearing held on March 2, 2011, the state district court held:

> [B]ased on the conviction for violation of 40:967 in this court on December 7, 2010, for possession with intent to distribute methamphetamine, I find that you are a third felony offender.  I find that the time period is appropriate given the last date of the release on the last offense and that giving any time served or periods that you were in custody that you are within the 10-year period in order for the state to charge you as a multiple offender, and as I indicated, I find that you are a third felony offender.[31]

Prior to filing his appellate brief, counsel advised petitioner of the three claims he intended to assert on appeal (i.e. challenges to the denial of the motion to continue, the denial of the motion to suppress,[32] and the denial of a motion to recess), and he requested petitioner's input.  However, appellate counsel expressly advised petitioner of the potential danger involved in asserting claims which might result in the habitual offender adjudication and sentence being overturned:

> I enclose a copy of the multiple offender statute as well as the statute you were convicted of violating.  I have put the sentencing provisions in bold.  As bad as your sentence is it could be substantially more, up to life, if the state proved more convictions at a subsequent multiple offender hearing.  I advise you of the risk involved because I wouldn't be doing my job if I didn't.[33]

---

[29] State Rec., Vol. 1 of 5, Multiple Offender Bill of Information.
[30] State Rec., Vol. 1 of 5; Answer & Motion to Quash Multiple Offender Bill filed December 29, 2010, and Motion to Quash and Answer with Legal Arguments filed January 6, 2011.
[31] State Rec., Vol. 3 of 5, transcript of March 2, 2011, p. 530.
[32] Appellate counsel ultimately decided not to challenge the denial of the motion to suppress because of inherent weaknesses in that claim.  See Rec. Doc. 4-1, p. 20, Letter to Petitioner from Frank Sloan dated July 29, 2011.
[33] Rec. Doc. 4-1, p. 18, Letter to Petitioner from Frank Sloan dated May 31, 2011.

Moreover, it is clear that the state could in fact have attempted such a maneuver, because "the principles of double jeopardy do not apply to a retrial of the penalty enhancement statute." State v. Swaingan, 630 So.2d 300 (La. App. 5th Cir. 1993); accord State v. Johnson, 432 So.2d 815, 817 (La. 1983) ("Defendant is not protected by principles of double jeopardy from being tried again on the question of the prior felony conviction."); State v. Baskin, 169 So.3d 667, 670-71 (La. App. 5th Cir. 2015) ("[B]ecause double jeopardy principles are inapplicable to sentence enhancement proceedings, the State may retry the multiple bill if able to cure the noted defect."); see also Wells v. Travis, Civ. Action No. 07-8056, 2008 WL 3166805, at *6 (E.D. La. Aug. 5, 2008), appeal dismissed, 435 Fed. App'x 308 (5th Cir. 2010); Henderson v. La. State Police Barracks, Civ. Action No. 01-0626, 2001 WL 936312, at *3-5 (E.D. La. Aug. 16, 2001).

Accordingly, even if counsel had asserted and prevailed on such a claim, the appellate court's decision would, at best, have merely vacated petitioner's habitual offender adjudication and sentencing and remanded the case. However, even if that occurred, that benefit would most likely have been only temporary, because the state could then simply have sought a new habitual offender adjudication. If the state did so, there is no reason to believe that the state could not have prevailed in the new proceeding. For example, petitioner does not contend that he was not in fact a third offender and legally eligible for forty-year enhanced sentence he received. Rather, his argument is only that the state *failed to prove* that the "discharge date" on his most recent predicate was within ten years of the instant offense at the prior habitual offender hearing; he does not suggest that the state would be *unable* to prove that fact at a new hearing.[34] Clearly, counsel is not

---

[34] On the contrary, there is every reason to believe that this could have been accomplished easily. Petitioner alleges, and the records show, that on February 3, 2000, he was sentenced to a term of twenty-two months imprisonment and given credit for two-hundred seventy-three days already served. See Rec. Doc. 4, p. 25, and Rec. Doc. 4-2, pp. 26-39. Accordingly, even after that credit was applied, more than one year remained on his sentence, meaning that he

ineffective for failing to pursue a challenge that would have produced only a temporary reprieve for his client.  See, e.g., Lindsey v. Cain, Civ. Action No. 10-4502, 2011 WL 3861344, at *18 (E.D. La. July 8, 2011), adopted, 2011 WL 3861154 (E.D. La. Aug. 31, 2011), aff'd, 514 Fed. App'x 466 (5th Cir. 2013).

Moreover, not only is it likely that petitioner would have received no lasting benefit, it is possible that he could ultimately be harmed.  As his counsel explained, because of petitioner's extensive criminal history, the state may well have been able to obtain a significantly longer enhanced sentence if given the opportunity for a "do-over."  A choice by counsel to forgo a challenge which, if successful, might ultimately expose his client to more onerous punishment simply does not violate the Sixth Amendment.  See, e.g., Brown v. Cain, 337 F.3d 546, 550 (5th Cir. 2003).[35]

In summary, it is clear that petitioner has not demonstrated that the state court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for *habeas corpus* relief filed by Warren Gordon be **DISMISSED WITH PREJUDICE**.

---

was not due for discharge until sometime in 2001.  In that the instant offense was committed on July 19, 2010, it appears that the state would not face a formidable obstacle in proving that his discharge date was less than ten years prior to the commission of the instant offense, well before expiration of the "cleansing period."

[35] Because appellate counsel was not ineffective for these reasons, the Court need not address the state's argument that the counsel could not have raised the claim in any event because it was not properly preserved.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[36]

New Orleans, Louisiana, this twenty-second day of December, 2015.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[36] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.